**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARVIN DOVBERG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASD SLEEP, LLC, d/b/a AMERICAN SLEEP DENTISTRY,<br><br>Defendant. | Civil Action No. 2:26-cv-04804-AMP |

**ASD SLEEP, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. ARGUMENT ..... 3

A. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF FAILED TO PLAUSIBLY ALLEGE AN INJURY-IN-FACT SUFFICIENT TO CONFER STANDING. ..... 3

1. Plaintiff Does Not Adequately Allege Injury-In-Fact. ..... 3

B. THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM. ..... 9

1. Legal Standard. ..... 9

2. Plaintiff Fails to State a Claim for Invasion of Privacy (Count I). ..... 9

3. Plaintiff Fails to State a Claim for Breach of Confidence (Count II). ..... 11

4. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty (Count III). ..... 13

5. Plaintiff Fails to State a Claim for Negligence (Count IV). ..... 15

6. Plaintiff Fails to State a Claim for Unjust Enrichment (Count V). ..... 17

7. Plaintiff Fails to State a Claim under the Wiretap Act (Count VI). ..... 18

8. Plaintiff Fails to State a Claim under WESCA (Count VII). ..... 21

9. Plaintiff Fails to State a Claim for Fraud (Count VIII). ..... 23

IV. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adair v. Cigna Corp. Servs., LLC*,
818 F.Supp.3d 641 (E.D. Pa. 2026) .......... 6, 8, 13, 14, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9, 15, 16

*Baker v. City of Pittsburgh*,
No. 2:24-cv-461, 2025 WL 33637 (W.D. Pa. Jan. 6, 2025) .......... 19

*Baker v. Lackner*,
No. 2:24-cv-461, 2025 WL 1208200 (W.D. Pa. Apr. 25, 2025) .......... 19

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*Brunecz v. Warren Gen. Hosp.*,
No. 24-203, 2026 WL 2043024 (W.D. Pa. July 15, 2026) .......... 13, 14

*Christidis v. First Pa. Mortgage Trust*,
717 F.2d 96 (3d Cir. 1983) .......... 23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 4

*Clemens v. ExecuPharm, Inc.*,
678 F.Supp.3d 629 (E.D. Pa. 2023) .......... 11

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) .......... 7

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) (*Cook II*) .......... 4, 5, 6, 10

*Cook v. GameStop, Inc.*,
689 F.Supp.3d 58 (W.D. Pa. 2023) (*Cook I*) .......... 22

*Doe v. Post Acute Med., LLC*,
1:24-CV-547, 2025 WL 511069 (M.D. Pa. Feb. 14, 2025) .......... 22

*Gerhart v. Energy Transfer Partners, L.P.*,
No. 1:17-cv-01726, 2020 WL 1503674 (M.D. Pa. Mar. 30, 2020)........................................ 10

*Gross v. Coloplast Corp.*,
434 F.Supp.3d 245 (E.D. Pa. 2020) ........................................................................ 23

*Harold ex rel. Harold v. McGann*,
406 F.Supp.2d 562 (E.D. Pa. 2005) ........................................................................ 11, 12

*Hartley v. Urb. Outfitters, Inc.*,
740 F.Supp.3d 410 (E.D. Pa. 2024) ........................................................................ 6, 7

*Heaven v. Prime Hydration LLC*,
761 F.Supp.3d 812 (E.D. Pa. 2025) ........................................................................ 5

*Huber v. Taylor*,
469 F.3d 67 (3d Cir. 2006) .................................................................................... 15

*In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*,
175 F.4th 423 (3d Cir. 2026) .................................................................................. 6

*In re Flonase Antitrust Litig.*,
692 F.Supp.2d 524 (E.D. Pa. 2010) ........................................................................ 9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .................................................................................. 19

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 n.13 (N.D. Cal. Mar. 18, 2014)........................ 20

*Ingrao v. AddShoppers, Inc.*,
No. 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024)............................................. 21, 22

*Kamal v. J. Crew Grp., Inc.*,
918 F.3d 102 (3d Cir. 2019) .................................................................................. 11

*Lasche v. New Jersey*,
No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022) .................................................. 7

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) .................................................................................. 20

*Munday v. Avis Budget Grp., Inc.*,
No. 22-4807, 2025 WL 3737910 (E.D. Pa. Oct. 10, 2025)…………………………………….5

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)......................................... 15, 16, 21

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 20

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) (*Popa II*) .......... 22, 23

*Popa v. Harriet Carter Gifts, Inc.*,
426 F.Supp.3d 108 (W.D. Pa. 2019) (*Popa I*) .......... 9, 10

*Popa v. Microsoft Corp.*,
154 F.4th 784 (9th Cir. 2025) .......... 5

*Ross v. Westchester Cnty. Jail*,
No. 10 Civ. 3937(DLC), 2012 WL 86467 (S.D.N.Y. Jan. 11, 2012) .......... 6

*Santoro v. Tower Health*,
No. 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .......... 15, 21

*Smart v. Main Line Health*,
No. 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) .......... 7

*Smart v. Main Line Health*,
No. 22-5239, 2026 WL 1008171 (E.D. Pa. Apr. 14, 2026) .......... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 3, 4

*Steinberg v. CVS Caremark Corp.*,
899 F.Supp.2d 331 (E.D. Pa. 2012) .......... 10, 17, 18

*Stevens v. TD Bank, N.A.*,
No. 24-8311, 2025 WL 1779164 (D.N.J. June 27, 2025) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 4, 8

*Volio v. Sugarhouse HSP Gaming LP*,
No. 2:25-cv-00039-JDW, 2026 WL 2280619 (E.D. Pa. Aug. 7, 2026) .......... 12

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 4

**State Cases**

*Chicarella v. Passant*,
343 Pa. Super. 330, 494 A.2d 1109 (1985) .......... 10

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020) ........ 22

*Gibbs v. Ernst*,
538 Pa. 193 (1994) ........ 23

*In re Clark's Est.*,
467 Pa. 628 (1976) ........ 11

*In re Scott's Est.*,
455 Pa. 429, 316 A.2d 883 (1974) ........ 11

*Marion v. Bryn Mawr Tr. Co.*,
675 Pa. 624 (2023) ........ 13

*Pro Golf Mfg. v. Trib. Rev. Newspaper Co.*,
809 A.2d 243 (Pa. 2002) ........ 10

*Yenchi v. Ameriprise Fin., Inc.*,
639 Pa. 618 (2017) ........ 13

**Federal Statutes**

18 U.S.C. § 2511(1)(a) ........ 18

18 U.S.C. § 2511(2)(d) ........ 19, 20

**State Statutes**

18 Pa. C.S. § 5702 ........ 22

18 Pa. C.S. § 5704(4) ........ 22

**Federal Rules**

Federal Rule of Civil Procedure 9(b) ........ 23

Federal Rule of Civil Procedure 12(b)(1) ........ 1, 3

Federal Rule of Civil Procedure 12(b)(6) ........ 1, 9

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant ASD Sleep, LLC, d/b/a American Sleep Dentistry ("ASD") submits this Motion to Dismiss the Class Action Complaint ("Complaint") filed by Plaintiff Marvin Dovberg ("Plaintiff").

## I. <u>INTRODUCTION</u>

ASD supplies sleep apnea testing and treatment solutions that are long-standing, clinically-supported, and dentist-directed sleep appliance alternatives to Continuous Positive Airway Pressure ("CPAP") machines. ASD allows individuals to schedule an appointment with ASD to assess whether they or someone they know may be a viable candidate for a sleep apnea treatment device. Plaintiff alleges he sought to explore ASD's sleep apnea treatment options and therefore visited ASD's website, where he voluntarily submitted a limited amount of information: his name; his email address; and his telephone number. Plaintiff further alleges that, when he provided that limited information to ASD to begin the process of scheduling an appointment, ASD contemporaneously disclosed his "Sensitive Health Information" to third parties without his consent. He asserts eight causes of action: (i) invasion of privacy; (ii) breach of confidence; (iii) breach of fiduciary duty; (iv) negligence; (v) unjust enrichment; (vi) violation of the federal Electronic Communications Privacy Act ("Wiretap Act"); (vii) violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"); and (viii) fraud.

As further detailed below, the Court should dismiss the Complaint for lack of subject matter jurisdiction due to Plaintiff's failure to sufficiently allege any plausible, concrete injury-in-fact stemming from his alleged provision of limited contact information to ASD. More specifically, Plaintiff fails to allege disclosure of any "sensitive or scandalizing information" necessary for his alleged harm to be analogous to a violation of traditionally recognized privacy torts. The Complaint also fails to state a claim for any of the eight causes of action alleged therein.

The Complaint largely rests on cookie-cutter allegations, with only meager allegations detailing any facts specific to Plaintiff. Further, the Complaint contains several screenshots purporting to show how ASD transmitted information to third parties, such as Google and Facebook. But the Complaint fails to tie those screenshots to Plaintiff or any *actual transmission* (as opposed to mere local staging) of the information at issue in this case. ASD therefore respectfully requests that the Court dismiss Plaintiff's complaint in its entirety, with prejudice.

## II. FACTUAL BACKGROUND

While ASD vehemently disagrees with Plaintiff's allegations—including the alleged transmittal of Plaintiff's name and contact information to third parties for marketing purposes—for purposes of this Motion, ASD sets forth the relevant facts as they are alleged in the Complaint.

ASD offers a sleep apnea treatment oral appliance that prevents the muscle collapse that causes sleep apnea. (Compl. ¶ 3.) Plaintiff alleges he accessed ASD's website in or around February 2026 and completed an online form—requesting only his name, phone number, and email address—to schedule an appointment to determine whether he might be a candidate for sleep apnea treatment. (*Id.* ¶¶ 22, 90.) According to Plaintiff, this limited provision of information indicated that he had consulted ASD about sleep apnea treatment. (*Id.* ¶ 25.) Plaintiff alleges he was not advised that the information he provided would be disclosed to any third party. (*Id.* ¶¶ 23-24.)

Plaintiff alleges that ASD used certain tracking technologies on its website that collected and transmitted his information to third parties, including Google and Facebook. (*Id.* ¶ 87.) Meta allegedly provided pixel tracking technology to website operators like ASD that operated invisibly to website users, enabling certain data collection based on users' voluntary provision of that information. (*See id.* ¶¶ 73-85.) Similarly, Google's "Tracking Tools" allegedly collected information from third-party websites to "sell targeted advertising." (*See id.* ¶¶ 53-57.) Plaintiff

consequently asserts that he has suffered harm due to ASD's alleged disclosure of his personal information without his authorization. (*Id.* ¶ 19.) Importantly, the Complaint does ***not*** allege economic harm, actual or threatened theft of Plaintiff's identity, nor that any third party misused Plaintiff's alleged personal information in any way.

## III. ARGUMENT

### A. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF FAILED TO PLAUSIBLY ALLEGE AN INJURY-IN-FACT SUFFICIENT TO CONFER STANDING.

To establish standing, Plaintiff must show he suffered an injury-in-fact that is fairly traceable to ASD that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff bears the burden to clearly allege facts demonstrating each element of standing. *Id.* (citation omitted).

The Complaint fails to plead a sufficient injury-in-fact and should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Complaint merely alleges ASD obtained and disclosed certain of Plaintiff's information that he voluntarily provided to ASD through an online scheduling questionnaire—an alleged harm of the kind the Third Circuit and courts within it have routinely held does *not* give rise to a concrete and particularized injury-in-fact. To establish an injury-in-fact in a "web tracking" case such as this, a plaintiff must allege facts amounting to a violation analogous to traditionally recognized privacy torts. Plaintiff comes nowhere near meeting that standard. Accordingly, the Court should dismiss the Complaint for lack of standing.

#### 1. Plaintiff Does Not Adequately Allege Injury-In-Fact.

##### *a. Legal Standard.*

To adequately plead an injury-in-fact, Plaintiff must plausibly allege he suffered a "concrete, particularized, and actual or imminent injury." *TransUnion LLC v. Ramirez*, 594 U.S.

413, 423 (2021). An injury "must affect the plaintiff in a personal and individual way" to be particularized and must be "real" and "not abstract" to be concrete. *Spokeo*, 578 U.S. at 339. Where a plaintiff seeks monetary damages, the mere risk of future harm, without more, is not a sufficiently concrete harm to confer standing. *TransUnion*, 594 U.S. at 436. Plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

In a putative class action, a named plaintiff must show "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Further, Article III requires an individualized, concrete, and particularized injury sufficient to confer standing even in the context of an alleged statutory violation. *Cook v. GameStop, Inc.*, 148 F.4th 153, 158 (3d Cir. 2025) (citing *TransUnion*, 594 U.S. at 426) ("*Cook II*").

*b. Plaintiff's Allegations of Harm are Insufficient to Confer Standing.*

Plaintiff alleges five vague categories of harm resulting from ASD's conduct: (1) "invasion of medical privacy;" (2) "lack of trust in communicating with medical providers;" (3) "loss of benefit of the bargain;" (4) "diminution of value of the Sensitive Health Information;" and (5) "continued and ongoing risk to their Sensitive Health Information." (Compl. ¶ 19.) The Complaint provides no details regarding these alleged harms, and Plaintiff's bare allegations are insufficient to confer standing.

This case involves allegations of "web tracking" and the alleged unauthorized provision to third parties of Plaintiff's personal data, which Plaintiff voluntarily disclosed to ASD through interactions with ASD's website. Plaintiff's allegations amount to nothing more than an assertion that ASD's website employed tracking technology that recorded routine browsing activity—

precisely the type of intangible harm that courts have consistently held insufficient to confer Article III standing. The Third Circuit has held that, in such "web tracking" cases, establishing an injury in fact requires a plaintiff plausibly allege "the disclosure of sensitive or scandalizing information." *Cook II*, 148 F.4th at 159. "If there are no grounds to believe that the information will result in humiliation, then there is no comparable harm." *Id.* (quoting *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145-46 (3d Cir. 2024)).

Courts have routinely held that plaintiffs asserting facts similar to the Complaint's allegations failed to meet this standard. In *Cook II*, the Third Circuit affirmed dismissal for lack of standing where the tracked information "could not plausibly . . . result[] in embarrassment or humiliation." *Id.* at 159; *see also Munday v. Avis Budget Grp., Inc.*, No. 22-4807, 2025 WL 3737910, at *1 n.1 (E.D. Pa. Oct. 10, 2025) (quoting *Popa v. Microsoft Corp.*, 154 F.4th 784, 791 (9th Cir. 2025)) (finding the plaintiff lacked standing "because she failed to allege how 'the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law.'"). The *Cook* plaintiff alleged that GameStop had employed technology allowing it to capture and reproduce her interactions with the defendant's website. *Cook II*, 148 F.4th at 161. The Third Circuit found that the plaintiff's interactions with the website were not presumed private—"[m]ost of us understand that what we do on the Internet is not completely private." *Id.* (alteration in original) (internal quotations omitted). Further, the Court found no injury even when the defendant "did not ask website visitors for prior consent before collecting web browsing activity." *Compare id. with* (Compl. ¶ 105) ("ASD does not even present this banner until after it has already disclosed the user's . . . [i]nformation.").

Courts in this district have similarly held that disclosure of non-sensitive data does not constitute sufficient harm for standing. *See*, *e.g.*, *Heaven v. Prime Hydration LLC*, 761 F.Supp.3d 812, 816 (E.D. Pa. 2025) ("[P]ersonal information[] does not necessarily result in an injury in fact if collected or disclosed."); *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 432 (3d Cir. 2026) ("When the harm is based on an intrusion into a plaintiff's affairs, those affairs must (at least plausibly) be private."); *Hartley v. Urb. Outfitters, Inc.*, 740 F.Supp.3d 410, 420-21 (E.D. Pa. 2024) (finding collection of personal information does not create an injury in fact, especially where plaintiff was a willing subscriber and voluntarily disclosed it); *see also Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *7, *9 (S.D.N.Y. Jan. 11, 2012) (disclosure of sleep apnea-related information could not underlie plaintiff's constitutional claims because "sleep apnea is not an intimate or shameful condition[.]"). "The harm caused . . . necessarily accompanies an intrusion into a person's solitude or private affairs." *Cook II*, 148 F.4th at 161. "Absent that type of intrusion, the harm [] alleged is not similar." *Id.*

The Complaint attempts to supply sensitivity to the information by reasoning that ASD offers only a sleep-apnea appliance and that a person who schedules a consultation therefore either has sleep apnea or seeks evaluation for it. (*See* Compl. ¶ 100). According to the Complaint, the information allegedly shared with third parties comprised of Plaintiff's name, email address, and telephone number. Scheduling a consultation on ASD's open website does not disclose any diagnosis, symptoms, medication, treatment history, or medical record. *Cf. Adair v. Cigna Corp. Servs., LLC*, 818 F.Supp.3d 641, 660-62 (E.D. Pa. 2026) (finding plaintiff plausibly alleged concrete harm where the information tracked expressly included the plaintiff's medical history, medical diagnosis, and state of health).

Plaintiff goes on to make myriad allegations about Google and Meta's tracking technologies. (Compl. ¶¶ 51-103.) "But 'allegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected.'" *Stevens v. TD Bank, N.A.*, No. 24-8311, 2025 WL 1779164, at *5 (D.N.J. June 27, 2025) (quoting *Hartley*, 740 F.Supp.3d at 422). Moreover, "allegations regarding 'a *hypothetical visitor*' to [the defendant's] website do not suffice." *Id.* (emphasis in original) (quoting *Smart v. Main Line Health*, No. 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024)). Here, Plaintiff's allegations as to what Google and Meta *can* do, and the information ASD allegedly disclosed using a "test name" on a date different from Plaintiff's visit, are insufficient to show Plaintiff's own "browsing activity was subsequently disclosed." *Id.* These allegations fail to address critical facts like: (1) whether Plaintiff, like an overwhelming number of internet users, accessed ASD's website using a browser designed or configured to block third-party requests like those referenced in the Complaint; (2) whether Plaintiff had installed a plug-in or add-on to his web browser that blocks third-party requests; (3) whether Plaintiff had visited ASD's website using an "Incognito," "Private," or other similar instance of his web browser that would have blocked the use of tracking technologies; (4) whether Plaintiff's information was in fact transmitted in response to the referenced third-party requests; and (5) whether Plaintiff's information—if in fact transmitted to Meta and/or Google—was first hashed or encrypted such that its contents were not decipherable to those third parties.

Plaintiff's remaining allegations of harm are exactly the type of allegations a court must disregard on a motion to dismiss. *See Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *3 (3d Cir. Mar. 1, 2022) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)) (finding that courts should "disregard" "allegations that are 'so threadbare or speculative that they fail to cross the line between the conclusory and the factual'" on a motion to dismiss).

*First*, Plaintiff alleges a "lack of trust in communicating with medical providers." (Compl. ¶ 19.) This allegation is far too conclusory and speculative to confer standing under Article III. Plaintiff fails to allege any facts that demonstrate a particularized or actual injury traceable to the alleged lack of trust. Without specific allegations detailing how this alleged lack of trust has resulted in tangible harm or affected his ability to receive medical care, the allegation cannot confer standing. *See TransUnion*, 594 U.S. at 423.

*Second*, Plaintiff's conclusory allegations regarding "diminution in value" do not confer standing. (Compl. ¶ 19.) To sufficiently allege such injury, Plaintiff must assert that "(1) [his] information has economic value; and, (2) the acquisition and subsequent use of that information has diminished that economic value, to Plaintiff's detriment." *Adair*, 818 F.Supp.3d at 664. No such injury exists where, as here, "Defendants have not *literally* taken Plaintiffs' data away such that it is no longer available to them;" and where "[t]he data still exists, and it remains at Plaintiffs' disposal." *Id.* at 664-65 (emphasis in original) (citations omitted). Mere allegations of harm by "having their confidential [] information used for the benefit of Defendants and others" are insufficient to confer standing. *Id.* at 665.

*Third*, Plaintiff's conclusory allegation that ASD failed to provide Plaintiff "with the full value of the [] services for which [he] paid" is insufficient. (Compl. ¶ 192). Indeed, Plaintiff does not allege he provided any payment to ASD or that any such payment "went toward providing the security and confidentiality that Defendants promised." *Id.* at 665-66.

*Lastly*, Plaintiff pleads "continued and ongoing risk to [his] Sensitive Health Information." (Compl. ¶ 19.) Putting aside the fact that Plaintiff's name, email address and phone number do not constitute "Sensitive Health Information," the mere risk of future harm, without more, does not qualify as a concrete harm for standing purposes. *TransUnion*, 594 U.S. at 436. Further, nowhere

does the Complaint identify what this purported "ongoing risk" entails, nor does the Complaint plead any facts showing how the "ongoing risk" could likely result in any imminent, tangible harm.

Because Plaintiff has suffered no harm due to ASD's alleged conduct, he lacks standing to pursue his asserted claims. His Complaint should therefore be dismissed with prejudice.

### B. THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM.

#### 1. Legal Standard.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of her 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

#### 2. Plaintiff Fails to State a Claim for Invasion of Privacy (Count I).

Plaintiff's Count I fails because the Complaint does not allege any legitimate, reasonable expectation of privacy, any "intrusion" upon Plaintiff's privacy as a matter of law, nor any "highly offensive" conduct or harm stemming from the ubiquitous practice of using internet tracking technology. To state a claim for intrusion upon seclusion under Pennsylvania law,[1] a plaintiff must

---

[1] Because the Complaint does not reference which state's law applies to Plaintiff's common law claims, and because conducting a choice of law analysis would require a comparison of multiple states' laws, including at least Pennsylvania law (where Plaintiff resides) and Utah law (where ASD's principal place of business is located), solely for the purposes of this Motion to Dismiss, ASD will assume Pennsylvania law applies to all non-statutory counts. *See In re Flonase Antitrust Litig.*, 692 F.Supp.2d 524, 534 (E.D. Pa. 2010) (declining to conduct a choice of law analysis at the motion-to-dismiss stage because "choice-of-law issues may be determined at or after class

show: (1) a defendant "intentionally intrude[d] . . . upon the solitude or seclusion of another or his private affairs or concerns" and the intrusion "would be highly offensive to a reasonable person." *Popa v. Harriet Carter Gifts, Inc.*, 426 F.Supp.3d 108, 120 (W.D. Pa. 2019) (*Popa I*).

"[A]llegations of consumer tracking through a third party's [] use of cookies [are] not offensive enough to survive a motion to dismiss." *Id.* at 121. Instead, to be "sufficiently offensive as to give rise to an actionable claim for invasion of seclusion [the] invasion must be '***of the sort which would cause mental suffering, shame or humiliation to a person of ordinary sensibilities***.'" *Id.* (emphasis in original) (quoting *Chicarella v. Passant*, 343 Pa. Super. 330, 494 A.2d 1109, 1114 (1985)); *see also Gerhart v. Energy Transfer Partners, L.P.*, No. 1:17-cv-01726, 2020 WL 1503674, at *26 (M.D. Pa. Mar. 30, 2020) (quoting *Pro Golf Mfg. v. Trib. Rev. Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002)) (same). Nowhere in the Complaint is there a single allegation that the information disclosed would cause mental suffering, shame, or humiliation. (*See generally* Compl.) Even if there was, disclosure of a full name, email address, and/or phone number—or even an express disclosure about an inquiry into sleep apnea (which does not exist in this case)—is insufficient to sustain a claim for intrusion upon seclusion. *See Popa I*, 426 F.Supp.3d at 122 (internal quotations omitted) ("[H]ospital records and . . . HIV status [are] not highly offensive to a reasonable person.").

Further, Plaintiff fails to state a claim because a person generally has no legitimate expectation of privacy in information he voluntarily turns over to third parties. *See Steinberg v. CVS Caremark Corp.*, 899 F.Supp.2d 331, 342-43 (E.D. Pa. 2012). That remains true even if the information "[is] later disclosed to a third party." *Id.* at 343; *see also Cook II*, 148 F.4th at 160

---

certification"). ASD notes, however, that these choice-of-law issues will prove to be insurmountable for Plaintiff at the class certification stage, if this case is not dismissed before then.

(internal quotations omitted) ("[M]ost of us understand that what we do on the Internet is not completely private."). By his own allegations, Plaintiff *voluntarily* disclosed to ASD only his name and contact information, and thus there is no actionable intrusion. (Compl. ¶¶ 22-23, 25.) Moreover, Plaintiff's allegations are too vague and conclusory to adequately plead his claim. While the Complaint embeds screenshots as purported examples of how information is allegedly transmitted to third parties, the screenshots are not tied to Plaintiff, nor to any specific transmission by ASD of Plaintiff's information that was allegedly disclosed to a third party. (*Id.* ¶¶ 91, 94-95.) Indeed, Plaintiff admits as much: "the information in the disclosures below is not Plaintiff's information." (*Id.* ¶ 89.) The Complaint therefore does not support any actionable invasion of privacy, and the Court should dismiss Count I.

**3. Plaintiff Fails to State a Claim for Breach of Confidence (Count II).**

Plaintiff's Count II fails because the Complaint does not plausibly allege any "confidential relationship" between Plaintiff and ASD. Under Pennsylvania law, a claim for breach of confidence lies only where there is an "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a *confidential relationship*." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (emphasis added). For a "confidential relationship" to exist, the plaintiff must have "reposed a special confidence in . . . [the defendant] to the extent that the parties do not deal with each other on equal terms." *Harold ex rel. Harold v. McGann*, 406 F.Supp.2d 562, 571 (E.D. Pa. 2005) (quoting *In re Clark's Est.*, 467 Pa. 628, 635 (1976)). This requires an "overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other." *Id.* Critically, a mere business association can create a confidential relationship "only if one party surrenders substantial control over some portion of his affairs to the other." *Id.* (quoting *In re Scott's Est.*, 455 Pa. 429, 316 A.2d 883, 886 (1974)); *see also Clemens v.*

*ExecuPharm, Inc.*, 678 F.Supp.3d 629, 638 (E.D. Pa. 2023) (dismissing breach of confidence claim for failure to plausibly allege any "confidential relationship").[2]

Plaintiff fails to allege facts that plausibly support any "confidential relationship" between him and ASD at the time he allegedly visited the website and entered his name, email address, and phone number. (*See* Compl. ¶¶ 6, 90.) This cannot conceivably create any kind of "overmastering dominance" by ASD over Plaintiff. *McGann*, 406 F.Supp.2d at 571. Nor do Plaintiff's allegations describe any "substantial control over some portion of his affairs" by ASD. *Id.* The Complaint simply describes an arm's-length interaction between himself and ASD's website. Pennsylvania courts have roundly rejected the assertion that a "confidential relationship" can arise from this kind of typical business transaction. *Id.*; *see also Volio v. Sugarhouse HSP Gaming LP*, No. 2:25-cv-00039-JDW, 2026 WL 2280619, at *6 (E.D. Pa. Aug. 7, 2026) (dismissing breach of confidence claim where plaintiffs failed to allege defendants "acted as confidential advisers, exercised control over their affairs, or occupied a position of trust different from that of any other business collecting customer information.").

To the extent Plaintiff argues that ASD formed a "confidential relationship" with him because it is a "medical provider," that bald allegation is conclusory and unsupported by the Complaint. Count II vaguely references the alleged duties of "medical providers." (Compl. ¶¶ 187, 189.) But *nowhere* does the Complaint actually allege that ASD is a "medical provider." It contains no allegations that could support that ASD is one. Rather, the Complaint plainly describes ASD as a telehealth company that sells sleep apnea devices to consumers over the internet. The Complaint does not plausibly allege that any patient-provider relationship (or any similarly "confidential"

[2] Notably, of the numerous "web tracking" putative class action cases Pennsylvania federal courts have addressed, ASD has not located any that alleged a cause of action for breach of confidence.

relationship) formed when Plaintiff voluntarily provided three pieces of routine contact information on ASD's commercial website. Accordingly, Plaintiff fails to state a claim for breach of confidence and the Court should dismiss Count II.

#### 4. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty (Count III).

Plaintiff's Count III fails because a fiduciary relationship cannot be established by a consumer providing three pieces of routine contact information to a business as part of an arm's-length commercial transaction. Further, Plaintiff pleads no injury resulting from any alleged breach. Under Pennsylvania law, a claim for breach of fiduciary duty requires: (1) the existence of a fiduciary relationship; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and, (3) that the plaintiff suffered an injury caused by the defendant's breach. *Marion v. Bryn Mawr Tr. Co.*, 675 Pa. 624, 645 (2023) (citation omitted). A fiduciary duty is "the highest duty implied by law" and can be imposed "only where the attendant conditions make it <u>certain</u> that a fiduciary relationship exists." *Yenchi v. Ameriprise Fin., Inc.*, 639 Pa. 618, 632-33 (2017) (emphasis added). The alleged relationship must "at a minimum . . . go beyond mere reliance on superior skill or an arm's-length consumer transaction and instead reflect that one party has ceded decision-making control to the other." *Adair*, 818 F.Supp.3d at 672 (cleaned up). "The mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship" and "***visiting a website alone*** cannot create a fiduciary relationship." *Brunecz v. Warren Gen. Hosp.*, No. 24-203, 2026 WL 2043024, at *12 (W.D. Pa. July 15, 2026) (cleaned up, emphasis added).

Count III fails for four reasons. *First*, Plaintiff's interaction with ASD allegedly consisted of voluntarily visiting its website and providing three limited, routine pieces of contact information. This brief, arm's-length commercial interaction does not create any fiduciary

obligation. The facts alleged here starkly contrast with recent "web tracking" cases where plaintiffs *did* adequately plead a fiduciary duty by alleging they provided numerous pieces of highly sensitive medical information. *Cf. Adair,* 818 F.Supp.3d at 672-73 (emphasizing plaintiffs "entered medical information on Defendants' website"); *Brunecz*, 2026 WL 2043024 at *12 (denying motion to dismiss breach of fiduciary duty claim because plaintiffs were "patients" of defendant and "conferred upon [defendant] a special confidence."). Here, the alleged disclosure of Plaintiff's name, email address, and website-visitor status does not implicate any fiduciary obligation.

*Second*, Count III appears to rest on the alleged duties of medical providers. (Compl. ¶ 195.) However, as explained *supra*, p. 12-13, ASD is not a medical provider nor does Plaintiff plausibly allege it is one.

*Third*, even assuming *arguendo* that Plaintiff's arm's-length commercial transaction with ASD formed a fiduciary relationship (which it did not), any alleged breach occurred <u>before</u> such a fiduciary obligation arose. The Complaint alleges that ASD permitted interception of Plaintiff's limited, routine contact information in "real time" and "immediately"—*i.e.*, at the time he first completed the "Verify My Coverage" web page depicted in Paragraph 90 of the Complaint. (Compl. ¶¶ 36, 67, 96, 248.) Any conceivable fiduciary obligation arose only once Plaintiff later scheduled and attended a Virtual Sleep Consultation, as that is the first point where Plaintiff allegedly went beyond "visiting [ASD's] website alone." *Brunecz*, 2026 WL 2043024 at *12. By that point the allegedly unauthorized disclosures had already occurred—indeed, according to the Complaint, it occurred at the very moment Plaintiff first interacted with ASD's website. Plaintiff cannot sustain a claim where the alleged fiduciary relationship arose only after the alleged breach.

*Finally*, Plaintiff does not plausibly allege any injury that could sustain a breach of fiduciary duty claim. As detailed in Section III(A)(1)(b) *supra*, Plaintiff conclusorily alleges a

myriad of vague and speculative injuries, for which the Complaint provides no detail. (Compl. ¶ 19.) The only tangible consequence of ASD's alleged actions is that Plaintiff "began seeing targeted online advertisements" related to sleep apnea. This cannot sustain a claim for breach of fiduciary duty. *See Huber v. Taylor*, 469 F.3d 67, 77 (3d Cir. 2006) (under Pennsylvania law, "claims for breach of fiduciary duty require actual harm.").

The Complaint therefore does not support any underlying fiduciary relationship, and the Court should dismiss Count III.

**5. Plaintiff Fails to State a Claim for Negligence (Count IV).**

Plaintiff's Count IV fails because the Complaint alleges no cognizable damages recoverable under a negligence theory. Even if the Complaint were to adequately allege damages, the economic loss doctrine would bar any recovery under a negligence theory.

To state a claim for negligence under Pennsylvania law, a plaintiff must plausibly allege: (1) a duty to conform to a certain standard for the protection of others against unreasonable risks; (2) the defendant's failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff. *Santoro v. Tower Health*, No. 22-4580, 2024 WL 1773371, at *5 (E.D. Pa. Apr. 24, 2024) (dismissing "web tracking" negligence and Wiretap Act claims); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2023 WL 7017734, at *4 (E.D. Pa. Oct. 10, 2023) (same). To satisfy this fourth element, a negligence plaintiff must allege sufficiently specific facts showing he "incurred actual loss or damages" to satisfy the federal pleading standard under *Iqbal*. *Murphy*, 2023 WL 7017734 at *4. In *Murphy*, the court held that plaintiffs "fail[ed] to describe how they sustained [their] alleged 'damages' or otherwise substantiate their existence," and that plaintiffs needed to "articulate their harm or actual loss with more precision[.]" *Id.* The court determined that plaintiffs' allegations of

"embarrassment, humiliation, emotional harm, and distress" were mere "boilerplate," and could not sustain a negligence claim "in the absence of facts to support them." *Id.*

The same logic holds here. Plaintiff fails to plead any harm constituting actual damages, let alone with any specificity satisfying the *Iqbal* standard. Plaintiff pleads—in just a *single* paragraph—that he allegedly suffered: invasion of medical privacy; lack of trust in communicating with medical providers (without specifying how or why); loss of "benefit of the bargain" (without describing the purported benefit or bargain); diminution of value of his "Sensitive Health Information" (without stating any value); and continued and ongoing risk to his "Sensitive Health Information" (without detailing any potential or imminent risk). (Compl. ¶ 19.) These allegations are too conclusory and vague to support a claim for damages that can sustain a negligence claim.

Further, because the crux of Plaintiff's vague harm allegations is that his personal information's value has been diminished—*i.e.*, that he lost the "benefit of the bargain"—his negligence claim is barred by the economic loss doctrine. *Smart v. Main Line Health*, No. 22-5239, 2026 WL 1008171, at *5 (E.D. Pa. Apr. 14, 2026) (holding that plaintiff's losses were "best construed as economic losses because [p]laintiff's theory [was] that he has lost the benefit of the bargain of selling his private information since [defendant] has devalued the private information by already giving it to marketers and advertisers."). Nor is Plaintiff's negligence claim saved by the "meandering set of statements [in the Complaint] that amount to the banal truths that health information has financial value to marketers." *Id.*; (*see* Compl. ¶¶ 122-127.) Those boilerplate allegations neither overcome the economic loss doctrine nor adequately state any actual loss or damages sufficient to sustain a negligence claim—particularly where Plaintiff has not credibly alleged that he intended to monetize his own personal information in a manner that would have resulted in a monetary gain.

Count IV fails and should be dismissed because the Complaint does not credibly or specifically allege damages sufficient to support a negligence claim.

**6. Plaintiff Fails to State a Claim for Unjust Enrichment (Count V).**

Plaintiff's Count V fails because the Complaint does not adequately allege any *unjust* retention of a benefit by ASD, nor any benefit conferred on ASD to Plaintiff's detriment. To state an unjust enrichment claim, a plaintiff must plausibly allege: (1) he conferred a benefit on the defendant; (2) the defendant appreciated those benefits; and (3) acceptance and retention of those benefits would be inequitable under the circumstances without payment of value to the plaintiff. *Steinberg*, 899 F.Supp.2d at 341. Where a plaintiff alleges unauthorized disclosure of information for which he could not "reasonably have expected compensation," no action for unjust enrichment lies. *Id.* Here, Plaintiff cannot plausibly claim any reasonable expectation to receive monetary compensation for merely his name, email address, and the fact he visited ASD's website.

In *Steinberg*, the court dismissed an unjust enrichment claim, reasoning:

> The relationship between the plaintiffs and defendants was one wherein the plaintiffs provided certain information in exchange for the provision of pharmacy services. Under the circumstances the plaintiffs could have no reasonable expectation of being compensated for the information related to that transaction, because that information carries with it no compensable value at the individual level . . .
>
> ***The plaintiff paid the defendants to fill prescriptions, and the defendants did so***. Retention of any benefit accruing to the defendants from the de-identification, aggregation, or sale of patient information could not be considered unjust under the circumstances.

*Id.* at 341-42 (emphasis added). The court rejected as "conclusory and inadequate" plaintiffs' allegation that "receipt of profits [by defendants] is unjust under the circumstances." *Id.* at 342.

The same reasoning applies to Plaintiff's voluntary provision of limited contact information to ASD. Plaintiff provided his contact information so that ASD could schedule an

initial sleep consultation, and ASD did so. (*See* Compl. ¶¶ 4, 6, 22, 23.) He got exactly what he could reasonably expect and what he bargained for when providing his limited contact information to ASD. Plaintiff does not allege any specifics on *why* it would allegedly be unjust for ASD to retain any benefit from receiving his limited contact information—in fact, Plaintiff specifically alleges that *he has no intention* of participating in the market for his personal information. (*Id.* ¶ 126.) The Complaint's allegation that Plaintiff's information has diminished in value is conclusory and implausible; it explains nothing about how ASD allegedly providing that information to Google and Meta would reduce that information's value (to the extent simple contact information has any non-negligible value at all), such that disgorgement of profits could be warranted. *See Steinberg*, 899 F.Supp.2d at 341-42; *see also Adair*, 818 F.Supp.3d at 664-65 (dismissing "web tracking" unjust enrichment claim on Article III standing grounds and emphasizing "[d]efendants have not *literally* taken [p]laintiffs' data away such that it is no longer available to them.").

Accordingly, Plaintiff fails to adequately plead an unjust enrichment claim and the Court should dismiss Count V.

#### 7. Plaintiff Fails to State a Claim under the Wiretap Act (Count VI).

Plaintiff's Count VI fails because the "party exception" to the Wiretap Act applies to ASD and exempts it from liability, and the "crime-tort exception" to the party exception is inapplicable. The Wiretap Act provides for civil penalties where a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Additionally, the Wiretap Act provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the

> purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). The first part of this quoted language sets out the "party exception" to the Wiretap Act, and the second part articulates the "crime-tort exception."

*a. Plaintiff's Wiretap Act Claim Fails because ASD Was an Intended Party to the Alleged Communication.*

ASD's status as an intended recipient of Plaintiff's communication shields ASD from any Wiretap Act liability. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) (where a defendant allegedly intercepts a communication, the defendant is a party to the communication and therefore "[has] done nothing unlawful under the Wiretap Act.") (citing 18 U.S.C. § 2511(2)(d)).

Here, Plaintiff admits he intended to communicate with and provide his routine contact information to ASD by inputting this information into a questionnaire on ASD's website. (Compl. ¶¶ 22, 25) (alleging that Plaintiff "provid[ed] his [information] through the Website" to ASD.) Thus, the party exception plainly applies and bars any Wiretap Act claim against ASD. *Baker v. Lackner*, No. 2:24-cv-461, 2025 WL 1208200, at *3 (W.D. Pa. Apr. 25, 2025) ("One-party consent is a viable defense under the federal Wiretap Act.").

*b. No Crime-Tort Exception to the Party Exception Applies.*

Plaintiff's assertion that ASD acted with "tortious" and "criminal" intent (Compl. ¶¶ 235, 243) is contradicted by numerous other, more detailed (and more plausible) allegations in the Complaint. For the crime-tort exception to apply, the defendant must have had a criminal or tortious purpose for the interception independent of the allegedly unlawful interception itself. *In re Google Cookie Placement*, 806 F.3d at 145; *Baker v. City of Pittsburgh*, No. 2:24-cv-461, 2025 WL 33637, at *6 (W.D. Pa. Jan. 6, 2025). The crime-tort exception "cannot apply where the

interceptor's [alleged] purpose has plainly not been to perpetuate torts . . . but to make money." *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *see also Meredith v. Gavin*, 446 F.2d 794, 798 (8th Cir. 1971) (crime-tort exception applies only where the recording party's "purpose is evil," such as "blackmail [or] stealing business secrets").

Here, Plaintiff does not plead facts plausibly supporting that ASD allegedly "intercepted" his communication for the purpose of committing an independent tortious or criminal act. To the contrary, the Complaint repeatedly alleges that ASD's "interception" and provision of Plaintiff's information to third parties was for *business purposes*. For example, in Count VI itself the Complaint alleges ASD intercepted Plaintiff's electronic communication "for financial gain" and "to increase its profit margins." (Compl. ¶ 239.) Elsewhere it alleges ASD installed Google and Meta tracking tools "for purposes of financial gain" (*id.* ¶ 8), "to prioritize its marketing efforts and profits" (*id.* ¶ 16), "to prioritize its own profits (*id.* ¶ 213), and to "monetize consumers' data" (*Id.* ¶ 35.) These allegations plainly describe commercial transactions through which ASD's aim was to generate and/or track advertising-related revenue, based *only* on the alleged disclosure of routine contact information of website visitors who voluntarily provided it. Any argument that the interception itself reflects a criminal or tortious intent (for instance, an intent to violate HIPAA) is impermissibly circular and fails as a matter of law. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("according to [plaintiff], the civil RICO conspiracy is furthered by the recordings, and the recordings themselves further the ongoing civil RICO conspiracy. Such reasoning is not permitted by § 2511(2)(d).")

*c. Plaintiff Does Not Allege "Interception" of Any Actual PHI.*

To be clear, the only information Plaintiff alleges ASD "intercepted" through its website and disclosed to third parties is (1) his name, and (2) his email address. The fact that Plaintiff visited the ASD website and appeared to express interest in sleep apnea-related information was not "intercepted" in any way; Plaintiff's mere presence on ASD's website was not a "communication" capable of being intercepted in the first place. Plaintiff does not allege he communicated a single piece of PHI—or any health-related information at all—through the website that was subsequently provided to any third party.

To constitute a Wiretap Act violation, the information intercepted must itself be "individually identifiable health information" under HIPAA. *Santoro*, 2024 WL 1773371 at *4 (dismissing Wiretap Act claim where complaint lacked allegations of any "HIPAA-protected information from plaintiffs [that] was transferred to Meta" via the interception); *see also Murphy*, 2023 WL 7017734 at *3 (dismissing Wiretap Act claim where plaintiffs failed to allege "that any specific test results, diagnoses, or sensitive messages were intercepted or improperly disclosed."). That ASD allegedly shared Plaintiff's website-visitor status, without more, cannot plausibly underlie a Wiretap Act claim.

Because the Complaint does not support any crime-tort exception to the party exception and does not allege any actual interception of PHI, the Court should dismiss Count VI.

**8. Plaintiff Fails to State a Claim under WESCA (Count VII).**

Plaintiff's WESCA claim fails for several reasons. As an initial matter, Plaintiff cannot bring a claim under WESCA when the Complaint contains no allegations that any purported interception occurred in Pennsylvania. "The Third Circuit has limited liability under WESCA only to those communications intercepted at servers located within Pennsylvania's borders." *Ingrao v.*

*AddShoppers, Inc.*, No. 24-1022, 2024 WL 4892514, at *12 (E.D. Pa. Nov. 25, 2024). Interception occurs at the plaintiff's servers. *Id.* The failure to allege the interception occurred in Pennsylvania warrants dismissal of Plaintiff's WESCA claims. *See id.* ("Because there are no allegations that [the defendant's] alleged interception occurred in Pennsylvania, Plaintiff [] has failed to state a claim against Defendant [] under WESCA.").

Plaintiff's WESCA claim also fails because Plaintiff does not allege the interception of any "contents." "Contents" means "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. Mere tracking technology recording routine browsing activity, or information that a user visited a website, do not constitute "contents." *See Ingrao*, 2024 WL 4892514, at *13. Here, the information allegedly tracked—names and emails submitted through an online scheduling form—does not constitute "contents." *Doe v. Post Acute Med., LLC*, 1:24-CV-547, 2025 WL 511069, at *5 (M.D. Pa. Feb. 14, 2025) (finding information insufficient "even when it disclose[s] that person viewed [a specific] page"). The Complaint's extensive allegations about Google and Meta's tracking capabilities do not cure this deficiency—"it is not enough for [the plaintiff] to allege the potential capabilities of the [tracking code]. Rather, she needed to allege that [the defendants], in fact, harnessed the capabilities she describes, and it had the result of capturing the contents of specific communications." *Id.* (second alteration in original) (quoting *Cook v. GameStop, Inc.*, 689 F.Supp.3d 58, 69 (W.D. Pa. 2023) (*Cook I*)). The Complaint fails to identify what "contents" of Plaintiff's communications were allegedly intercepted.

Finally, Plaintiff's WESCA claim fails because he voluntarily submitted the information to ASD. WESCA includes an exception for interceptions "where all parties to the communications have given prior consent." 18 Pa. C.S. § 5704(4). "Prior consent" does not require actual knowledge—consent exists "when the person being recorded knew or should have known[] that

the conversation was being recorded." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) (*Popa II*) (alteration in original) (quoting *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020)). Here, Plaintiff's voluntary use of ASD's publicly available website and voluntary submission of limited information through its form demonstrates implied consent under WESCA.

The Complaint therefore does not support a WESCA claim and the Court should dismiss Count VII.

**9. Plaintiff Fails to State a Claim for Fraud (Count VIII).**

Plaintiff fails to plead with any particularity the elements of fraud based on misrepresentation: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 538 Pa. 193, 207 (1994).

*a. Plaintiff Fails to Plead Fraud with Requisite Particularity.*

Plaintiff's fraud claim in Count VIII rests solely on an allegedly deceptive "consent banner" about "cookies" on ASD's website. (Compl. ¶¶ 257-68.) State law fraud claims must meet the heightened pleading requirements in Federal Rule of Civil Procedure 9(b). *Gross v. Coloplast Corp.*, 434 F.Supp.3d 245, 252 (E.D. Pa. 2020); *Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983). Rule 9(b) mandates that plaintiffs plead with particularity "the circumstances of the alleged fraud with precise allegations of date, time, or place," demonstrating "the who, what, when, where, and how of the fraud." *Gross*, 717 F.2d at 249.

Plaintiff pleads no particularities regarding this "consent banner" as it relates to him. The Complaint does not allege when (or if) he encountered it, his understanding of or reaction to it,

how (or even if) Plaintiff justifiably relied on the "consent banner," and what action (if any) he consequently took. Count VIII fails to meet the Rule 9(b) standard.

*b. Plaintiff Fails to Plausibly Plead Fraud.*

More fundamentally, Plaintiff's fraud claim makes no logical sense. Per the Complaint, the allegedly fraudulent "consent banner" "does not appear until the user reaches the page to schedule their appointment" with ASD (Compl. ¶ 105)—meaning it appears *after* the point when Plaintiff allegedly provided ASD with the limited information that underlies this lawsuit. Given this sequence of events, it is impossible for the "consent banner" to have fraudulently induced Plaintiff into providing that routine contact through the ASD's website's initial online questionnaire. Consistent with this reality, Plaintiff does not actually allege that he was fraudulently induced to provide ASD with any information.

The Complaint contains only vague fraud-related allegations, for instance that the "consent banner" generally "lures users into making unsecure communications that they have been falsely told to be secure." (*Id.* ¶ 109.) Plaintiff draws zero nexus between the vague, generalized allegations of fraud and his own experience using ASD's website. The Complaint does not detail Plaintiff's interaction with the "consent banner." Even assuming he interacted with it at some point, the Complaint fails to allege what, if any, information Plaintiff disclosed to ASD afterward and how the "consent banner" induced that disclosure from Plaintiff to ASD. The Court cannot draw any reasonable inference about this either; the "consent banner" is completely untethered to the limited contact information Plaintiff provided to ASD when he first used the ASD website.

In short, the Complaint does not even attempt to plead the materiality, justifiable reliance, and proximately caused damages elements. Plaintiff's fraud theory is wholly deficient and the Court should dismiss Count VIII.

## IV. CONCLUSION

Plaintiff fails to allege any injury-in-fact, fairly traceable to ASD, that is analogous to a violation of traditionally recognized privacy torts sufficient to confer Article III standing. And for each of its eight counts, the Complaint fails to adequately plead non-conclusory allegations that could establish the elements of the claim. Plaintiff's Complaint is replete with generalized, vague, and conclusory allegations premised on his alleged voluntary provision of information to ASD, a company with which he has not alleged any preexisting relationship. Plaintiff's theories of liability are implausible and legally unsupported, and the Complaint should be dismissed in its entirety.

Dated: September 14, 2026

**FOLEY & LARDNER LLP**

/s/ *Leah R. Imbrogno*
Leah R. Imbrogno (PA 308450)
limbrogno@foley.com
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
P. 313.234.7100
F. 313.234.2800

John J. Atallah (*pro hac vice* forthcoming)
jatallah@foley.com
555 South Flower Street, Suite 3300
Los Angeles, California 90071
T. 213.972.4500
F. 213.486.0065

Mason D. Roberts (*pro hac vice* forthcoming)
mroberts@foley.com
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
T. 312.832.4500
F. 312.832.4700

Ana Sofia Batista (*pro hac vice* forthcoming)
abatista@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
T. 214.999.3000
F. 214.999.4667

*Attorneys for Defendant ASD Sleep, LLC, d/b/a American Sleep Dentistry*

**Certificate of Service**

The undersigned hereby certifies that on September 14, 2026, a true and correct copy of the above and foregoing document was served via ECF on all counsel of record.

*/s/ Leah R. Imbrogno*
Leah R. Imbrogno